Good morning, your honors. Stephen Polk appearing for the appellant, Peter Tran. Who is present in court? Mr. Tran. This case hinges on the question of whether Mr. Tran's goods, which were destroyed by the government, were contraband or not. There is no question that if they were contraband, he has no right to the return of his goods nor to be compensated for the loss of them. Now, there are some stipulations here, as I understand it. Both sides agree that they were imported from Vietnam or not? No, your honor. The meaning of whether they were imported actually is a significant issue here. They were shipped from the port of Saigon in Vietnam. That was the place they were laid down. Both sides agree that it would — standing by itself, these arms would be contraband? No, your honor. Because they weren't really arms. They were just pieces of arms. Parts. But none of them could have been assembled to make a firearm. No, but my understanding is, and maybe this is wrong, that there is an interpretive question of whether they were imported from Vietnam, but if they were imported from Vietnam or if they, quote, originated in Vietnam, then they were contraband. Is that right? That is correct. All right. Okay. So the fact that they were parts rather than whole doesn't matter. So it boils down to, were they — did they originate in or were they imported from Vietnam, which is one leg of the requirement? If they were originated — if they originated in Vietnam or were imported from Vietnam, and if they were imported into the United States, then they were derivative contraband. So what is your ultimate position about what the originating means? Is it — if something is — is it where it began its most recent trip? Is it where it lived for a recent amount of time? Is it where it was manufactured? Or is it where it was sent from? What is it? Well, I believe that in the context here, there are two possible countries of origin that could logically be applied, the United States, which was the country of manufacture, or Laos, which is the country from which they were purchased and they began their journey. Is that agreed upon or is that a disputed issue? Pardon me, Your Honor? Is that a disputed issue or not? As to where they came from? As to whether they were — began their journey in Laos. I know — I know there is some documentation that they did, but does the government agree that they did? The government has not presented any evidence to the contrary. I believe the government's position is simply that since they passed through Vietnam on the journey and got on a ship in Vietnam, that that taints them sufficiently to make them of Vietnamese origin or having been imported from Vietnam. Aren't you really suggesting that we should read the statute that goods are imported only from the country in which the journey or ship that began? I believe that that is a logical — the only logical definition of importation. Otherwise — That's your — that's your baseline position, correct? Yes, Your Honor. Otherwise, if a ship left China, for example, with goods and stopped to gas up in Vietnam — But isn't that approach to the meaning of import too narrow, given the complicated nature of the statute, international trade and smuggling and everything that that statute is meant to deal with? Otherwise, it could be argued that goods are imported from every country they have passed over on their journey. But your position is they're imported only from where? These goods were imported from Laos. That is our position, Your Honor. Well, they weren't made in — they weren't made in Laos, though. No, Your Honor. Nor were they made in Vietnam. Why Laos? Why do you pick Laos? Was it in any number of countries besides Laos? Because they had been in Laos for a good 35 years, and no one knows precisely when or how they got to Laos. But the ship that brought them from Vietnam to the United States did not originate in Laos, did it? That — these materials were loaded in Vietnam, as I understand it. That's correct, Your Honor. There is no seaport in Laos where a ship could port. Right. Exactly. The Bill of Lading says the port and country of origin is Vietnam. Does that matter? The Bill of Lading was not filled out by the Magistrate Tran. It's just of interest to me, what was the point that you made about a ship having a cook from a prescribed country? What relevance does that have? It went over my head, quite frankly. The Government's argument is that if anything is transported on something that belongs to a prescribed country, and that's clear in the statute. For example, supposing they were shipped on a ship that belonged to the Government of Vietnam, we lose. What's a cook got to do with it? But how do you define what makes a method of transportation belong to a country? Is the presence of Vietnamese nationals on board sufficient? Well, what about this 27 CFR 44752e? First of all, are you relying on that? I was confused about that. Are you — this is the section about applications for permits to import articles that were manufactured in or have been in an article country or area prescribed under the section to be approved if they are curios or relics and meet the following criteria. Are you relying on that, or are you distinguishing that, or what — how do you think that section fits in? The Government has proffered evidence that Mr. Tran did not have a permit to import from Vietnam. Not from anywhere. But — pardon me? Is there any evidence that he had a permit to import from anywhere? There has been no evidence presented on that issue. Though the lower court did request that specific detail, it was never provided. The only thing he— Let me ask you, did he, in fact, have an import license? I have no idea. Well, if he had a license to import it, wouldn't it be his burden to show he had a license that he could bring this into the country because he has government license to do so? The Government has the burden of proof to show that the goods were contraband. The defendant does not have the burden of proof to prove they were not. But what — let's go back to this section, okay? This section says that it applies to articles manufactured in or have been in the country. That, first of all, suggests that there is a problem that originates, seems to cover things that were manufactured or have been in the country. Otherwise, why do you need an exception? That is an exception, for example, supposing the goods — if these goods, unquestionably which are made in the United States, were located in Vietnam and were brought from Vietnam, they wouldn't — there would need to be an exception. And there are possibly goods that you cannot tell exactly where they originated. You'd have to rely on where they've been to determine what their origin was. Counsel, you're down to about a minute and a half of remaining time. You may wish to hold for rebuttal or continue. Your choice. I would prefer to reserve that unless the Court has more questions for me. You may reserve, counsel. Thank you very much. We'll hear from the government. May it please the Court. My name is Ann Voights, and I represent the government in this case. Do you agree with your adversary that you have the burden of proof to show that this was contraband? We do. Do you agree with him that you have the burden of proof of showing he doesn't have a license to import it? We submit that the evidence shows that he does not. There is a specific declaration of Gregory Suchan indicating that he had no license to import, either on a permanent basis or on a temporary basis, from Vietnam. We would also submit that more broadly, the fact that he was imported from Vietnam. Maybe they were looking in the wrong place. Maybe if they had looked up Laos, they would have come up with something. Correct. But we'd submit that all the evidence of the falsification of the contents of the containers, including the declaration of an individual who said that he was paid by Mr. Tran to use his name on the bills of lading, the fact that the containers were mislabeled as sewing parts and other machine parts rather than what they, in fact, were. There is some documentation that the stuff started in Laos, right? The documentation has only been what was submitted now in connection with his -- Right now. I'm sorry, in connection with the dependent's motion, his second renewed motion. Okay. Well, that's what we're -- that's where your burden is, right? Yes. And we would submit, however, the government's position is that the items, in fact, originated from Vietnam, that everything is consistent with that fact, but even if--. Was there a finding of fact that his showing that they originated in Laos was a lie? The Court did not expressly rule on that. What the district court did, I believe, was say that either, regardless of whether it came immediately from Vietnam, what the Court found was that it did come from Vietnam. So we have to assume for present purposes that it didn't start in Laos, don't we? Otherwise, we have to have an evidentiary hearing and a determination. Well, I think even if it spent some time in Laos, even his documents establish that they came from Vietnam before they were in Laos, and that, again, the default is that you cannot bring any of these items into the country without a permit, and that permits in particular from a prescribed country are unavailable. What is your ultimate position about what originated means or what import means? Is it just where it last came from or what? We think it's where it came from. And in this case, where it was--. So if I send something from, you know, Germany to the United States, but I send it by truck to Holland and then it gets on a boat and it's shipped from Holland, it's imported from Holland? Our position would be there that it began in Holland. That it began its trip in Germany. But in this case, the bills of lading all indicate that it began in Vietnam. It lists a Vietnamese freight company. It lists the individual who submitted a declaration. So that's what's determinative, how the people who run the ship fill out the bill of lading. And there is a document in this record of a arrangement with a --- somebody in Laos, a peace company. Is that right? Yes. And it seems to demonstrate, and it could all be a fraud, but it says that they're -- that Mr. Tran is arranging with a peace company to send these materials to be packed and transported. It says FOB is understood to be Ho Chi Minh City, Vietnam due to Lao Vietnamese   There is a document in this record of a document that states that there may be a geographical restriction of not having a port. All expenses for transportation of the money from Laos to Vietnam will be paid by the seller. So this is all a -- it purports to be, maybe it's a fraud, a document arranging to send this material from Laos to Vietnam, you know, shortly before it is then sent from Vietnam to the United States. Is that right? Yes. We submit, though, that that should be weighed against all the other evidence, which included transcripts of conversations in which Mr. Tran admitted that he knew that smuggling weapons from Vietnam was illegal. The district court never made that finding, did it? No, but the district court did find in the -- that the weapons at least at most were stored in Laos, and found that under 44752E, and this goes back to your question to defense counsel, that even if it had been stored in Laos for some period of time, it didn't meet the requirements under that section, which requires, obviously, that something meet the criteria for being a curio or relic, that it had been stored for at least five years in a non-prescribed country, and that they be manufactured either before a prescribed country became prescribed or in a non-prescribed country. And you think the district court made that finding? Yes. I think if the Court looks, the Court addressed the 4452E issue on its SER 6 and 7. What page? SER 6 and 7. And in relevant parts, the district court's conclusion was saying because Tran never received any permit pursuant to section 447.52 to import defense articles from Vietnam as curios or otherwise, the alleged storage of the cargo in Laos prior to their importation is irrelevant. And she relied on the Siu Chan declaration. But now we're back to the permit question, because you have evidence that he doesn't have a permit to import from Vietnam, but you don't have any evidence that he didn't have a permit to import from Laos, right? We don't have evidence in the form of a declaration from the State Department. But we would submit that all of the evidence regarding the conditions of the shipment, the fact that they were – their contents were misrepresented, the fact that there's evidence that the defendant paid someone else to use his name on the bills of lading, all of those suggest that he didn't think what he was doing was legal. I think that's fair. But I don't know whether that's just positive or whether it was legal. Well, I think it's consistent with the fact that if you look at the entire regulatory scheme, because it's not simply a dichotomy between having – not being able to get a permit, not being able to bring in things from a prescribed country, or being able to bring in defense items if they're from a non-prescribed country, all defense items have to be imported with a license and with – in compliance with a series of fairly complicated regulations. And what happens here is if it's a prescribed country, then generally, unless it falls into the small curios and relics exception, it cannot – a permit cannot be granted. The district court didn't even say it wasn't a curio or a relic. He just said he didn't have a permit. Yes. The district court didn't address the question of whether it would qualify as a curio or relic. Right. And what's the evidence that he didn't have a permit? Again, I think we would point the Court to the combination of the fact that the     And I think we would point the Court to the combination of the Sioux Chan Declaration and then all of the documents that were contemporaneous about the shipping, none of which mention the Peace Company, all of which list the point of loading as – as Vietnam, and list a Vietnamese freight company or this individual who said that he was paid by Mr. Tran to put his name on the bills of lading. If you didn't destroy these – these articles, you would have had to return them to him, of course, if you didn't destroy them, under what you claim was your jurisdiction to do so. They were destroyed. Well, how do you respond to his argument that you're trying to make him into an armed smuggler or a, quote, bad guy, close quote, when you yourself had dropped the criminal charges against him for the smuggling? Well, the criminal charges were dismissed, and the government dismissed its appeal, ultimately. Well, you dismissed it, meaning you, for some reason, didn't pursue what you thought you had probable cause to go forward with. Correct. But whether – if I might address that, I think it's a separate issue from whether these items were contraband. Well, if they were contraband, you would have had to return them to him, and you – the question is whether or not they were contraband would have been part of the proof of the criminal trial. Part, but not all, Your Honor. It would have been an essential part of it, though. Yes. You put the major in short. Yes. And you decided not to go forward with that because I assume that you thought you didn't have probable cause, that they were contraband. No. In fact, the case was dismissed by the – by order of the district court based on a number of grounds, including prosecutorial misconduct and a speedy trial act violations. And then when the issue arose on appeal, the court – But that plays no part in our determination on the civil action. Correct. Doesn't color it at all? We submit that the question of contraband, whether these items came – originated from Vietnam, and whether they were imported into the U.S. without a permit, yes, we would submit that that should be viewed. It seems strange to me that you're claiming you had such a – you have such an open and shut case on contraband being imported to the United States, yet you didn't prosecute that criminally. Well, I can say simply that although we did bring charges initially, once they were dismissed, I obviously wasn't the trial lawyer at the time. I can't speak to the reasons why they chose not to maintain the appeal. Is there any indication in the record about how – why they were destroyed by the United States? I believe it was – the record is not terribly sensitive on this motion, but I believe it was a matter of accident. Accident? In the sense they were intentionally destroyed, but there was miscommunication between the agency that was holding them and the prosecutors. But is this typical? I mean, in terms of a case like this, that these – that these articles would be destroyed? No, this would not be typical. I – just to go back to the beginning for a minute, and realizing that you're out of time, I'm still having problems with understanding what the government's position ultimately is about how we're supposed to determine whether these originated in Vietnam. I mean, at one point you said it was because they were shipped from there. And then you said, but if something – in my hypothetical, if something was – was transported to Holland and then put on a ship, it wasn't – it wouldn't have originated in Vietnam. And then we have this section which seems to show that there's an exception for things that have been in the country, even if they weren't there when they were shipped. And so, therefore, it can't – it doesn't sound from that that it's where they were last shipped from. So what is the standard? What are we supposed to be applying here? Well, I think if the Court looks at 44752e, it suggests that originating from should be given a broad meaning. Right. Okay. And it says that if it's manufactured in or if it has been in. And it doesn't put a time limit on that, but it's the one exception to the general rule that – So these could have originated in Laos if his scenario were true. Is that not right? No. I think – well, I think they would be viewed as coming from – because they say have been in a country that's prescribed. Laos is not prescribed. Your definition of any – it originates from any country in which it may have been manufactured or gone – or been through. Is that – that's – well, isn't that sort of contrary to what you would think is the everyday and dictionary explanation of what originate means? Well, we'd submit that in the sense of originate as in come from, the evidence we would submit does support that because we don't believe that the weapons did spend a significant period of time. We agree with the district court's finding. If you don't have any – if that's your position, then you have to go to an evidentiary hearing and have somebody make a determination, right? Because there is no such determination. In the alternative, though, we'd submit that even if they were, as the district court posited, even if they had been stored in Laos, that they still don't meet the criteria because 44752E says if they've been in a prescribed country, which is not, in fact, disputed, as the district court found, the defendant conceded that they had at least been in Vietnam. But are you – Your definition, it originates in any country in which it came through. If it came through a prescribed country. Is that the answer, yes or no? It's your – as I understand your argument, originate means any country in which it went through or was manufactured or went through. Yes. Under the terms of this regulation, we think that's how it should be read. But even read more narrowly, we would submit, even read simply as coming from in some sense of ownership, we would submit that that also is met here. All right. Thank you, counsel. Your time has expired. We'll hear from Mr. Pogue. He has reserve time. Thank you. I would submit, if it please the Court, that the district court's finding specifically relied on a holding that since the materials had passed through Vietnam and been shipped from Vietnam, they were imported from Vietnam, and that since Mr. Tran had no permit to import from Vietnam, then that made them derivative contraband. That still didn't show that they were imported into the United States. But given the fact that the evidence was all that they came from Laos, and that there is no evidence whatsoever as to lack of an import permit from any other place, which information would be well within the government's ability to obtain, that it's erroneous to hold that they came from Vietnam. What's wrong with reading this very broad statute, broadly, that it originated any country in which it was manufactured or went through? That would mean, Your Honor, if I were to buy some Mexican cigars and take a trip to Cuba and come back and hadn't smoked my Mexican cigars yet, I now have Cuban cigars because they took on a new origin when I went to Cuba. That's an absurd result. What – suppose you were right. What does that get you? Does it just get you an evidentiary hearing with an actual factual determination? I believe that the evidentiary hearing – or not a hearing, but that the evidentiary determination was already made. There was no evidence presented to contradict the Laotian origin. Kagan did not decide whether these things actually did originate in Laos in your sense of originate. He never determined whether these documents from the peace company were legitimate documents. She did not make that determination, no, Your Honor. Right. So if we thought that there wasn't enough – I mean, was this essentially like a summary judgment proceeding? Is that what this was? Basically, it was a motion that was decided on the pleadings without any evidence except what was submitted with the pleadings. I mean, only – there are some documents here. Yes. On the pleadings and documents, but not – there was no hearing. But the facts are not contested as to where these goods had been and where they came from. There – I have seen nothing to refute the peace company documents, nor anything to refute the question of value, as far as that goes. Well, but do you have – if – do you have ordinarily, if all the burdens on the government, usually with regard to exceptions, the burdens on the person invoking the exception. So if you're invoking this subsection E, and I'm not clear whether you are, but if you are invoking it, then you'd have the burden, I presume. That would be correct. We're not invoking an exception. We're simply saying that the law as being applied doesn't apply. So you're not invoking the exception? No, Your Honor. You don't think E is relevant? If he adds the 5-year exception? Yes. No, Your Honor. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Cowen, Berzon